IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION FILE |
| SALIM LOKHANDWALLA, | NO. 1:15-CR-252-MHC |
| Defendant. | |

## ORDER

This action comes before this Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Gerrilyn G. Brill [Doc. 24] that Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants [Doc. 13] and Motion to Suppress Evidence Seized Pursuant to Yahoo Email Address [Doc. 14] be denied. The Order for Service of the R&R [Doc. 25] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. Within the required time period, Defendant filed his objections to the R&R [Doc. 26] ("Def.'s Objs.").

I.    **STANDARD OF REVIEW**

In reviewing a Magistrate Judge's R&R, the district court "shall make a de

novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). If there are no specific objections to factual findings made by the magistrate judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1)(C), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59. In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II. DISCUSSION

Defendant's objections to the R&R focus on the warrantless search of packages sent from Hong Kong that were observed by postal inspectors in the Doraville, Georgia, Post Office on December 4, 2014. The Magistrate Judge found that the warrantless search of the packages was authorized as an extended border search. R&R at 5-9.

The Eleventh Circuit has "allowed searches [to be] conducted within the border even after the first practicable detention point where supported by reasonable suspicion." United States v. Garcia, 672 F.2d 1349, 1364 (11th Cir. 1982). These searches, referred to as extended border searches, "require reasonable certainty that a border crossing has occurred and that conditions have remained unchanged from the crossing until the search." Id. "Because searches so delayed may involve a greater invasion of privacy than searches at the border or first practicable detention point, . . . they may be conducted without a warrant only if supported by reasonable suspicion [of criminal activity]." Id.; see also United States v. Santiago, 837 F.2d 1545, 1548 (11th Cir. 1988) ("[A]n extended border search requires a reasonable suspicion of illegal activities.").

Defendant does not contest that a border crossing occurred but disputes the Magistrate Judge's finding that the government established with reasonable

certainty that the condition of the packages remained unchanged from the time they crossed the United States border. Def.'s Objs. at 1-3. The requirement that the condition of a package must have remained unchanged since crossing the border "is usually met by proving either that the object searched was subject to constant surveillance from the time it crossed the border *or that, under the circumstances, the contraband was not likely to have been introduced during any breaks in the surveillance.*" United States v. Richards, 638 F.2d 765, 772 (5th Cir. 1981) (emphasis added).[1] In Garcia, the Eleventh Circuit rejected the argument that a border search is invalid if it is not conducted at the border "or its functional equivalent" as long as there is reasonable suspicion of criminal activity.

> We view the "functional equivalent of the border" language as peculiarly appropriate to describe those searches that, although not conducted at the actual physical border, take place after a border crossing at the first practicable detention point. Such searches are truly border searches because their sole justification is the fact that the border has been crossed. Because the person, conveyance, or object is searched at the first place where it comes to rest within the country, it can truly be considered as having "brought the border with it." . . . [W]e believe it inappropriate to refer to searches conducted within the country at points other than the first practicable detention point as "border searches" or "functional-equivalent-of-the-border" searches. Such searches do not take place at the border, nor must they necessarily be near to it. . . . The delay in conducting such a search until the person has removed herself from the border area or port of

---

[1] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

4

>  entry makes the eventual unexpected search more intrusive, however, and therefore compels a requirement that those conducting the search have reasonable suspicion of criminal activity. Because searches in this category have a combined rationale and are not reasonable solely because the border has been crossed, they are not border searches in the traditional sense, either. Since the "extended border search" terminology has been used primarily in the context of this kind of search, we adopt that phrase to describe such searches.

Id. at 1365-66 (citations and internal punctuation omitted).

Defendant argues that because the packages cleared United States Customs at another postal facility prior to their search at the Doraville, Georgia, Post Office,[2] there is no assurance that the condition of the packages remained unchanged prior to their arrival in Doraville. Def.'s Objs. at 2-3. Defendant relies on Richards, which involved a parcel that arrived at the Foreign Mail Center in New York, was opened and inspected by a customs agent, was then resealed and sent to a postal inspector in Miami for a controlled delivery, and then picked up by the defendant. Richards, 638 F.2d at 767-68. The court held that "[t]he search was conducted with respect to a package that had undeniably crossed our international border and remained unchanged subsequent to that crossing." Id. at 773. Unlike Richards, Defendant asserts that in this case there is no agent that can testify as to

---

[2] Postal Inspector Martin Glover testified that the packages "came from Hong Kong and first went through some other United States postal facility before getting to the Doraville Post Office." Tr. of Aug. 27, 2015, Suppression H'rg [Doc. 18] ("Tr.") at 52.

5

the condition of the package upon its initial arrival in this country. Def.'s Objs. at 3. However, Richards does not stand for the proposition that there must be "eyes on" the package every step of the way after it crosses the border. In fact, Richards acknowledges that it is possible to have "breaks in the surveillance" as long as it can be shown that it is unlikely that contraband could have been introduced during that time. Id. at 772.

In this case, the Magistrate Judge found that the evidence produced by the Government at the suppression hearing confirmed that the boxes came into the United States from Hong Kong, went through an unidentified United States postal facility before being seen at the Doraville Post Office, and the boxes were heavily taped and did not appear to have been previously tampered with. R&R at 6; Tr. at 7-13, 16-19, 21, 57, 64-66. See United States v. King, 517 F.2d 350, 351 (5th Cir. 1975) (upholding warrantless search of envelopes at Birmingham, Alabama post office that had entered the United States at San Francisco and routed to Birmingham without first being inspected). This Court agrees that the Government has produced sufficient circumstantial evidence that the conditions of the boxes remained unchanged from the border crossing until the search in Doraville, Georgia. Defendant's objection is therefore **OVERRULED**.

Defendant also objects to the Magistrate Judge's finding that the warrantless searches of the boxes were supported by reasonable suspicion of criminal activity. Def's Objs. at 3-5. "When assessing reasonable suspicion, courts must 'look at the totality of the circumstances of each case to see whether the detaining [agent] has a particularized and objective basis for suspecting legal wrongdoing.'" United States v. Roberts, 357 F. App'x 226, 227 (11th Cir. 2009) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). "Although this standard is considerably less demanding than proof of wrongdoing by a preponderance of the evidence and less than probable cause, the Fourth Amendment nevertheless requires that the police articulate facts which provide some minimal, objective justification" for the search. United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989).

This Court agrees with the Magistrate Judge that, prior to the search of the packages in question, there was reasonable suspicion that the packages contained contraband. R&R at 7-9. Postal Inspector Gina Harrell testified that, on December 9, 2014, while present in the Doraville Post Office, she saw a total of four boxes originating from Hong Kong heavily sealed with yellow tape, with the contents labeled as "beauty products" on two of the boxes and addressed to "Sam" at a Doraville address. Tr. at 7-10. These facts were suspicious to Inspector Harrell because previous interdictions with boxes coming from Asia that had heavy yellow

7

tape and the label of "beauty products" contained illegal steroids. Tr. at 9-11. The boxes were shaken by Inspector Harrell and a fellow inspector and the sound emanating was consistent with pills that had been found in other boxes sent from Asia. Id. at 12-13. The boxes were taken by the two inspectors to the address indicated on the boxes and they were informed by a woman at the business address that the boxes were to be placed on a truck to be transported to Houston, Texas. Id. at 17-19. The intended delivery of the packages from Doraville to Houston by truck rather than direct mail suggested that the sender intended to circumvent the system to prevent the suspected contraband from being intercepted by postal authorizes in Houston. Tr. at 28. The inspectors kept the boxes in their possession in order to conduct a further investigation. Id. at 21.

The next day, Special Agent J. D. Cannon with Immigration and Customs Enforcement, Homeland Security Investigations, viewed and shook the four boxes and confirmed that they were consistent with packages that contained contraband such as illegal substances. Id. at 64, 64-66. Cannon testified that there was no indication that the boxes had been tampered with because of the heavy sealing with yellow tape and the fact they had come through the U.S. Mail. Id. at 57, 66.

The cases cited by the Magistrate Judge in which warrantless searches of mail from outside the United States were upheld based upon reasonable suspicion

8

support her finding in this case. R&R at 8-9. Defendant cites no cases in which a warrantless search of mail from outside the United States was rejected based upon lack of reasonable suspicion with facts similar to the case at bar. The one case cited by Defendant, United States v. Rangel-Portillo, 586 F.3d 376 (5th Cir. 2009), held that an agent's stop of a vehicle based solely on the facts that the stop was close to the border, and that "all of the passengers in the vehicle wore seatbelts, sat rigidly, refrained from talking to one another, and had no shopping bags" was insufficient to infer reasonable suspicion. 586 F.3d at 381. That case is clearly distinguishable from this one. Therefore, Defendant's objection as to the Magistrate Judge's finding of reasonable suspicion is **OVERRULED**.[3]

Based upon the foregoing, this Court finds that the Magistrate Judge's factual and legal conclusions were correct and that Defendant's objections are without merit. Accordingly, the Court **ADOPTS** the R&R [Doc. 24] as the Opinion and Order of this Court.

---

[3] Defendant makes no specific objection to the Magistrate Judge's findings with respect to the search warrant of the Yahoo Email account. This Court has reviewed the Magistrate Judge's factual and legal conclusions with respect to the recommended denial of Defendant's motion to suppress the search warrant and finds no plain error.

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants [Doc. 13] and Motion to Suppress Evidence Seized Pursuant to Yahoo Email Address [Doc. 14] are **DENIED**.

**IT IS SO ORDERED** this 2nd day of December, 2015.

_____
MARK H. COHEN
United States District Judge